

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

ENTERED
09/25/2019

| | | |
|---|---|---|
| IN RE: | § | |
| **EXCO RESOURCES, INC.,** *et al* | § | **CASE NO: 18-30155** |
| **Debtors** | § | |
| | § | **CHAPTER 11** |
| | § | |
| **BRUCE E. MR. LEONARD, JR.,** *et al* | § | |
| **Plaintiffs** | § | |
| | § | |
| **VS.** | § | **ADVERSARY NO. 18-03105** |
| | § | |
| **EXCO OPERATING COMPANY, LP** | § | |
| **Defendant** | § | |

## <u>MEMORANDUM OPINION</u>

Bruce E. Leonard, Jr. and Rancho Los Encino Viejos, LLC filed a state court suit against EXCO Operating Company, LP, on November 11, 2017. (ECF No. 1 at 2). Mr. Leonard's complaint alleges that EXCO breached the terms of an Oil, Gas, and Mineral Lease, which was executed between the parties in 2010. (ECF No. 1-1 at 3). Mr. Leonard argues that EXCO failed to comply with his contractual right of first refusal under the Lease and seeks specific performance or monetary damages as a remedy for this purported breach of contract. (ECF No. 1-1 at 5–6). Mr. Leonard's state court suit was removed to this Court on April 18, 2018, after EXCO filed its chapter 11 bankruptcy case. (*See* ECF No. 1).

On May 31, 2019, EXCO filed a motion for summary judgment, asserting that Mr. Leonard's breach of contract claim fails under Texas law because Mr. Leonard improperly exercised his right of first refusal. (*See* ECF No. 35). Mr. Leonard responds that although he failed to strictly adhere to the terms of the right of first refusal, EXCO's own acts excuse this failure under waiver, ratification, or estoppel. (*See* ECF No. 37 at 5–13).

For the reasons set forth below, EXCO's motion for summary judgment is granted.

## Background

Bruce E. Leonard, Jr. and Rancho Los Viejos, LLC own land located in Dimmit County, Texas.  (*See* ECF No. 1-1 at 2).  On March 30, 2010, Mr. Leonard executed an Oil, Gas, and Mineral Lease covering 200 acres with Joint Resources Company.  (ECF No. 1-1 at 2).  Shortly after signing the Lease, Joint Resources Company assigned its interest to Chesapeake Exploration, LLC.  (ECF No. 1-1 at 2).  In 2012, Chesapeake pooled the Lease with a larger tract of land and drilled a producing well named "Silva Unit Dim 1H" (the "Silva Well") on the pooled land.  (ECF No. 1-1 at 3).  EXCO obtained Chesapeake's interest in the Lease in 2013 and remains the current lessee.  (ECF No. 1-1 at 3).

This dispute focuses on Section 17 of the Lease, which grants Mr. Leonard a right of first refusal.  (ECF No. 37 at 2).  Under this provision, EXCO is obligated to notify Mr. Leonard if it desires to sell any well and has received an offer to purchase "any well and / or well related equipment."  (ECF No. 35 at 3).  This notice then triggers a ten-day option period, during which Mr. Leonard may match the offer.  (ECF No. 35 at 3).  However, to exercise this option, Mr. Leonard must deliver his acceptance to EXCO via certified mail.  (ECF No. 35 at 3).  Section 17 is reproduced below:

> 17.   If in the future, Lessee, or its heirs or assigns, desires to sell any well and / or well related equipment, and Lessee has either set the price for such sale, or has received a bona fide written offer to purchase said well and / or equipment, then Lessee shall be offered the first right of refusal to purchase and acquire said well and equipment, under the same terms, conditions, and at the same price.  Lessee shall furnish to Lessor in writing, delivered by certified mail, any such offer, and Lessor shall have ten (10) days from the receipt of such offer, to accept or reject the offer in writing by certified mail.  If such offer is accepted, Lessor shall have fifteen (15) days from the date of receipt by Lessee of such acceptance, to complete and close the transaction.

(ECF No. 35 at 3).

In 2017, EXCO began negotiations with VOG Palo Verde, LP to sell several of its oil and gas assets, including the Silva Well.  (ECF No. 35 at 3).  In accordance with the right of first refusal, on April 28, 2017, EXCO notified Mr. Leonard via e-mail and certified mail that it had entered into a Purchase and Sale Agreement ("PSA") to sell the Silva Well for $162,477.00 to VOG Palo Verde.  (ECF No. 37 at 2).  EXCO's notice advised Mr. Leonard of his rights under the right of first refusal and included a form for Mr. Leonard to indicate his decision and return to EXCO "via certified mail/return receipt requested."  (ECF No. 35 at 63).

On May 8, 2017, Mr. Leonard's counsel replied to EXCO via e-mail:

Attached please find the Preferential Right to Purchase Election executed by Mr. Brymer on behalf of [Mr. Leonard] exercising his right of first refusal to purchase all of EXCO's right title and interest in the Silva Unit DIM 1H for $162,477, with an effective date of January 1, 2017.  We now have fifteen days to close the transaction.  Please advise how you would like to receive the funds.  Also please forward the proposed assignment.

(ECF No. 35 at 69).  The parties do not dispute that Mr. Leonard failed to send this election via certified mail as required under Section 17 of the Lease.  (ECF Nos. 35 at 4; 37 at 2).

Despite not receiving Mr. Leonard's election via certified mail, EXCO's General Counsel acknowledged receipt of Mr. Leonard's e-mail, and replied that she would "revert shortly." (ECF No. 37-1 at 3).  After multiple communications between the parties, EXCO sent Mr. Leonard an assignment and bill of sale on May 26, 2017, and the parties anticipated closing the sale of the Silva Well with Mr. Leonard.  (ECF No. 37 at 3).  EXCO expected to execute the sale of the Silva Well concurrently with the sale of other oil and gas assets to VOG Palo Verde on June 1, 2017.  (ECF No. 37 at 3).

As June 1, 2017 approached, EXCO advised Mr. Leonard that the closing date was pushed back to June 15, 2017.  (ECF No. 37 at 3).  The parties continued to exchange information in anticipation of closing such as Mr. Leonard's designated operator, tax protest

information, and a possible extension of the closing date.  (ECF No. 37 at 3–4).  However, the sale of assets between EXCO and VOG Palo Verde fell apart and EXCO advised Mr. Leonard that it refused to assign its interest in the Silva Well to him.  (ECF No. 37 at 4).  Mr. Leonard demanded that EXCO comply with his election under the right of first refusal, but EXCO refused.  (ECF No. 37 at 4).

Mr. Leonard filed suit against EXCO in state court, alleging breach of contract and seeking specific performance for the sale of the Silva Well for $162,477.00 or monetary damages.  (ECF No. 35 at 4).  After EXCO filed its chapter 11 bankruptcy petition on January 15, 2018, this suit was removed to the U.S. Bankruptcy Court for the Western District of Texas, and then transferred to this Court on May 8, 2018.  (ECF No. 35 at 5).

EXCO now seeks summary judgment in this dispute, arguing that Mr. Leonard's failure to strictly comply with the contractual terms in the Lease negates his breach of contract claim. (ECF No. 35 at 5).  Specifically, Mr. Leonard's use of e-mail to exercise his right of first refusal did not comply with Section 17 of the Lease, which requires that he make his election via certified mail.  (ECF No. 35 at 8).  As a result, EXCO argues that Mr. Leonard's breach of contract claim fails as a matter of law because no contract for the sale of the Silva Well was formed between the parties under the right of first refusal.  (ECF No. 35 at 8–9).  In his response, Mr. Leonard concedes that he sent notice of his election to EXCO via e-mail.  (ECF No. 37 at 3). However, he argues that strict compliance with the Lease's contractual terms is excused through waiver, ratification, or estoppel in light of EXCO's actions.  (ECF No. 37 at 5–13).

The Court held a hearing on EXCO's motion for summary judgment on July 31, 2019, and took the matter under advisement at the conclusion of the hearing.

## Jurisdiction

The District Court has jurisdiction over this proceeding under 28 U.S.C. § 1334(a).  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (O).  Pursuant to 28 U.S.C. § 157(a), this proceeding has been referred to the Bankruptcy Court by General Order 2012-6.

## Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  FED. R. BANK. P. 7056 incorporates FED. R. CIV. P. 56 in adversary proceedings.  A party seeking summary judgment must demonstrate the absence of a genuine dispute of material fact by establishing the absence of evidence supporting an essential element of the non-movant's case.  *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009).  A genuine dispute of material fact is one that could affect the outcome of the action or allow a reasonable fact finder to find in favor of the non-moving party.  *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 170 (5th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

In cases involving the interpretation of a contract, summary judgment is only appropriate where the language of the contract is unambiguous.  *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1192 (2d Cir. 1996); *Cooper Indus., LLC v. Precision Castparts Corp.*, 2016 WL 4939565, at *6 (S.D. Tex. Sept. 14, 2016).

A court views the facts and evidence in the light most favorable to the non-moving party at all times.  *Ben-Levi v. Brown*, 136 S. Ct. 930 (2016).  Nevertheless, the Court is not obligated to search the record for the non-moving party's evidence.  *Keen v. Miller Envtl. Grp., Inc.*, 702

F.3d 239, 249 (5th Cir. 2012).   "Summary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence."  *Hemphill v. State Farm Mut. Auto. Ins. Co.*, 805 F.3d 535, 538 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1715 (2016).

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by citing to particular parts of materials in the record, showing that the materials cited do not establish the absence or presence of a genuine dispute, or showing that an adverse party cannot produce admissible evidence to support that fact.  FED. R. CIV. P. 56(c)(1).   The Court need consider only the cited materials, but it may consider other materials in the record.  FED. R. CIV. P. 56(c)(3).   The Court should not weigh the evidence.  *Wheat v. Fla. Par. Juvenile Justice Comm'n*, 811 F.3d 702, 713 (5th Cir. 2016).   A credibility determination may not be part of the summary judgment analysis.  *E.E.O.C. v. LHC Grp., Inc.*, 773 F.3d 688, 694 (5th Cir. 2014). However, a party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.  FED. R. CIV. P. 56(c)(2).   Moreover, the Court is not bound to search the record for the non-moving party's evidence of material issues.  *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir. 2014).

"The moving party bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact."  *Nola Spice Designs, LLC v. Haydel Enterprises, Inc.*, 783 F.3d 527, 536 (5th Cir. 2015).   The evidentiary support needed to meet the initial summary judgment burden depends on whether the movant bears the ultimate burden of proof at trial.

If the movant bears the burden of proof on an issue, a successful motion must present evidence entitling the movant to judgment at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986). Upon an adequate showing, the burden shifts to the non-moving party to establish a genuine dispute of material fact. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 322–24. The non-moving party must cite to specific evidence demonstrating a genuine dispute. FED. R. CIV. P. 56(c)(1); *Celotex*, 477 U.S. at 324. The non-moving party must also "articulate the manner in which that evidence supports that party's claim." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). Even if the movant meets its initial burden, the motion should be granted only if the non-movant cannot show a genuine dispute of material fact.

## Analysis

EXCO asserts that Mr. Leonard's faulty exercise of his right of first refusal entitles it to summary judgment. In response, Mr. Leonard argues that EXCO's conduct following the defective acceptance obligated EXCO to complete the sale to Mr. Leonard. Mr. Leonard relies on various equitable remedies in support of his position. As discussed below, Texas law is clear that Mr. Leonard's defective exercise of his right of first refusal operated as a rejection of EXCO's offer to sell. As such, the parties did not form a contract for the sale of the Silva Well. For that reason, Mr. Leonard's equitable arguments which rely on the existence of a contract fail as a matter of law. His quasi-contractual and estoppel arguments fail because he cannot demonstrate that EXCO's failure to sell caused him unconscionable harm.

### Right of First Refusal Under the Lease

EXCO argues that Mr. Leonard's attempted exercise of his right of first refusal was invalid because he transmitted his acceptance through e-mail rather than certified mail as required by Section 17 of the Lease. (ECF No. 35 at 8).

A right of first refusal grants an option holder a finite time period to accept an offer. *Holland v. Fleming*, 728 S.W.2d 820, 822-23 (Tex. App.—Houston [1st Dist.] 1987).  During this time, the offering party is bound to hold the offer open for the option holder.  *Id.* at 823.  The option holder's acceptance must be "unqualified, unambiguous, and in strict compliance with the terms of the agreement."  *Comeaux v. Suderman*, 93 S.W.3d 215, 220 (Tex. App.—Houston [14th Dist.] 2002) (citing *Crown Constr. Co., Inc. v. Huddleston*, 961 S.W.2d 552, 558 (Tex. App.—San Antonio 1997)).  "Accordingly, a failure to exercise an option according to its terms, including untimely or defective acceptance, is simply ineffectual, and legally amounts to nothing more than a rejection."  *Huddleston*, 961 S.W.2d at 558.

Section 17 of the Lease states that if EXCO receives "a bona fide written offer to purchase said well and / or equipment" then EXCO shall provide Mr. Leonard the offer in writing through certified mail.  (ECF No. 35 at 3).  The Lease then allowed Mr. Leonard "ten (10) days from the receipt of such offer, to accept or reject the offer in writing *by certified mail*." (ECF No. 35 at 3) (emphasis added).  EXCO sent Mr. Leonard notice of its offer from VOG Palo Verde via certified mail and e-mail on April 28, 2017.  (ECF No. 33 at 63).  Mr. Leonard was advised that his acceptance or rejection of the offer should be returned within ten days "via certified mail/return receipt requested."  (ECF No. 33 at 63).  Mr. Leonard's counsel replied on May 8, 2017, and stated that he was "exercising his right of first refusal to purchase all of EXCO's right title and interest in the [Silva Well] . . . ."  (ECF No. 33 at 69).

Although this response was sent within the window of time allotted in Section 17 of the Lease, it was sent through e-mail rather than certified mail.  (ECF No. 33 at 69).  Thus, Mr. Leonard failed to comply with the Lease's requirement that an election be made "in writing by certified mail."  (ECF No. 35 at 3).  EXCO provided the e-mail from Mr. Leonard's counsel to

support its claim.  (ECF No. 33 at 69).  Mr. Leonard provided no evidence to suggest an issue of fact, nor does he dispute that he failed to comply with the certified mail requirement of Section 17.  (*See* ECF No. 37).  Accordingly, Mr. Leonard's attempted exercise of his right of first refusal was defective under the plain terms of the Lease, rendering it a rejection under Texas law. *Huddleston*, 961 S.W.2d at 558.

<u>Mr. Leonard's Equitable Arguments</u>

Rather than dispute his compliance with the plain language of the Lease, Mr. Leonard's response focuses on the equitable factors that allegedly excuse his failure to comply with Section 17.  (ECF No. 37 at 5–13).  Mr. Leonard's argument focuses on case law that excuses compliance with terms of an option, EXCO's alleged waiver and ratification demonstrated by its course of conduct, and quasi estoppel.  (ECF No. 37 at 5–13).

At the outset, it is important to recognize that Mr. Leonard's reliance on equitable remedies is due to his failure to form a binding contract with EXCO.  A right of first refusal "matures into an enforceable option" after a decision to sell is made.  *Holland*, 728 S.W.2d at 822–23.  However, this option cannot become an enforceable contract without acceptance by the right holder.  *Comeaux*, 93 S.W.3d at 220 (citing *White v. Miller*, 518 S.W.2d 383, 385 (Tex. Civ. App.—Tyler 1974)).  As discussed above, Section 17 of the Lease required that acceptance of the option occur in writing through certified mail within ten days.  Mr. Leonard failed to comply with this requirement.  As a result, no contract formed, and the parties reverted to their status quo under the Lease after the option period expired.

*Excused Compliance*

Mr. Leonard argues that the facts of this case mirror case law in *Jones v. Gibbs*, 130 S.W.2d 265, 271 (Tex. 1939), which excuses strict compliance with the terms of an option

contract when three factors are met: (i) slight delay, (ii) insignificant loss to the offeror, and (iii) the offeree would suffer unconscionable hardship if relief is denied. (ECF No. 37 at 7). All three factors must be satisfied before a court may excuse strict compliance. *See id.* EXCO responds that *Jones* dealt with a lease renewal option, and case law which excuses compliance with a right of first refusal is distinguishable. (ECF No. 38 at 7). Even if the *Jones* test applies to this dispute, Mr. Leonard cannot satisfy the *Jones* factors.

*Slight Delay*

The first factor courts consider in determining whether to excuse strict compliance with the terms of an option is the length of the delay. *Jones*, 130 S.W.2d at 271; *Valley Educ. Found., Inc. v. ElderCare Properties Ltd. (In re ElderCare Properties Ltd.)*, 568 F.3d 506, 522 (5th Cir. 2009).

EXCO alleges that the delay in this case was not slight because Mr. Leonard has yet to comply with the terms of the right of first refusal and failed to provide a plausible explanation for this failure. (ECF No. 38 at 10–11). However, EXCO's argument fails to acknowledge the purpose of the *Jones* test, which is to excuse the "failure of the optionee to comply strictly with the terms or conditions of the option" in recognition of the fact that the rule of strict compliance "is not an absolutely inflexible one." *Jones*, 130 S.W.2d at 272. Although rare, cases applying the *Jones* test have excused a thirty-day lapse of an option period when other factors tip the equitable balance in favor of excusing strict compliance. *In re ElderCare Properties Ltd.*, 568 F.3d at 522 (thirty day delay considered slight following ten year original lease term).

Conversely, in this case, Mr. Leonard's purported acceptance was both timely and unequivocal. This was demonstrated through EXCO's response and subsequent negotiations with Mr. Leonard in anticipation of a sale. (ECF No. 37-1 at 23–32). However, Mr. Leonard's

e-mail was not effective under Section 17 of the Lease because it was not sent via certified mail. In this case it is the form of the acceptance rather than the delay, which forced Mr. Leonard to seek equitable relief for his failure. Accordingly, Mr. Leonard has carried his burden regarding the factor of slight delay.

*Insignificant Loss to the Lessor*

The second factor examines the harm that would occur to the opposing party if equity justifies excusing strict compliance with an option. *In re ElderCare Properties Ltd.*, 568 F.3d at 522. Mr. Leonard alleges that this element is satisfied because EXCO demonstrated its intent to proceed with the sale of the Silva Well and he is willing to pay the agreed price for the well. (ECF No. 37 at 7).

Despite Mr. Leonard's assertions, this factor is largely neutral with respect to whether his faulty acceptance might harm EXCO. Although a right of first refusal operates similar to an option contract, it does not "give the lessee the power to compel an unwilling owner to sell." *Comeaux,* 93 S.W.3d at 219 *(citing Riley v. Chapman Homes (Texas), Inc.*, 808 S.W.2d 184, 187 (Tex. App.—Houston [14th Dist] 1991)). EXCO's decision to sell the Silva Well was part of a larger sale of assets it anticipated selling to VOG Palo Verde. (ECF No. 37 at 4). Mr. Leonard's opportunity to purchase the Silva Well arose from his contractual rights and was triggered by this larger sale. (ECF No. 37 at 2). When the larger deal between EXCO and VOG Palo Verde was terminated, EXCO also ended Mr. Leonard's opportunity to purchase the Silva Well. (ECF No. 37 at 4). Neither EXCO nor Mr. Leonard quantified the harm that EXCO would experience if the sale occurred. (*See* ECF No. 38). EXCO's decision to terminate the sale of the Silva Well after the transaction with VOG Palo Verde fell through demonstrates its unwillingness to sell. This combined with the fact that EXCO cannot be compelled to sell under a right of first refusal

under Texas law suggests that EXCO would suffer some harm if forced to sell. *Comeaux*, 93 S.W.3d at 219. However, even if EXCO would suffer no harm from a forced sale, Mr. Leonard cannot satisfy the final prong of the *Jones* test.

*Unconscionable Hardship*

The final factor under *Jones* asks whether the failure to grant relief "would result in such hardship . . . as to make it unconscionable to enforce literally the condition precedent of the lease." 130 S.W.2d at 272; *In re ElderCare Properties Ltd.*, 568 F.3d at 523. Mr. Leonard cannot point to any unconscionable hardship in this case.

In *ElderCare Properties*, the Fifth Circuit found unconscionable hardship and allowed equitable intervention in the context of assumption of a lease. 568 F.3d at 523. A nursing home Operator filed bankruptcy and sought to assume the lease for its facility under 11 U.S.C. § 365. *Id.* at 511. The facility lease contained an option to extend the lease for an additional five years but required that the Operator provide written notice thirty days prior to the lease expiring. *Id.* at 510. The facility Owner argued that assumption of the lease was impossible because the lease terminated after the Operator failed to comply with the contractual terms of the option period. *Id.* at 513. The Fifth Circuit allowed equitable relief based on the hardship to the Operator. *Id.* at 523. The foundation of the Operator's chapter 11 plan of reorganization was the assumption of the lease, which was its most significant asset and vital for the continuation of the business. *Id.* Further, the Operator invested $300,000.00 in fees to demonstrate that the lease was not terminated, and the Owner acknowledge the assumption of the lease during mediation. *Id.* These considerations favored finding unconscionable hardship. *Id.* at 523–24.

Mr. Leonard argues that similar unconscionable hardship occurred in this case because the defect in acceptance was a technicality and he has incurred "significant attorney's fees

relying on [EXCO's] acceptance of the exercise of the [right of first refusal] . . . ."  (ECF No. 37 at 8).  Despite Mr. Leonard's attempt to demonstrate that his hardship is unconscionable, this case is wholly distinguishable from *ElderCare Properties*.  In *ElderCare Properties*, the Fifth Circuit stated that assumption provided "'the only basis' upon which [the Operator] 'can continue as a viable business.'"  568 F.3d at 523.  Here, Mr. Leonard provided no evidence of similar harm.  EXCO engaged in discussions with Mr. Leonard and both parties invested time and money in anticipation of closing the Silva Well sale.  However, when EXCO ended the transaction, the parties returned to their status quo before the sale offer.  The Lease remains in effect and Mr. Leonard retains his right of first refusal should EXCO decide to sell the well again in the future.  Importantly, Mr. Leonard's loss in this case—the right to purchase the Silva Well for $162,477.00—is the upside of buying a producing well in a depressed market compared to the price it would cost today.  Although this is a tangible loss, it fails to rise to the level of unconscionable harm which threatened the Operator's business in *ElderCare Properties*.

Accordingly, Mr. Leonard cannot show that equitable relief is necessary to avoid an unconscionable hardship.  For that reason, Texas law does not excuse Mr. Leonard's defective acceptance, and equitable relief is inappropriate in this case.  In context, EXCO's sole reason for selling the Silva Well was to engage in a much larger transaction.  (ECF No. 37 at 4).  That transaction failed to close.  (ECF No. 37 at 4).  The parties should be restored to the status quo ante so that EXCO will have the wells available for a future sale, and Mr. Leonard will retain his option if such a sale materializes.

<u>Waiver</u>

Mr. Leonard also argues that EXCO's response to his e-mail, which elected to pursue his option under the Lease, along with subsequent communications in anticipation of closing the

Silva Well's sale, raise an issue of fact regarding waiver.  (ECF No. 37 at 9–11).  EXCO responds that waiver is inapplicable in this case because no valid contract was formed under the option and that EXCO never disclaimed its right to an election delivered by certified mail under Section 17 of the Lease.  (ECF No. 38 at 12–15).

Under Texas law, waiver is an affirmative defense, which may be asserted if a party intentionally "relinquishes a known right or engages in conduct inconsistent with claiming that right."  *Sun Expl. & Prod. Co. v. Benton*, 728 S.W.2d 35, 37 (Tex. 1987).  Waiver may occur through express renunciation, silence, or inaction "for so long a period as to show an intention to yield the known right."  *Tenneco, Inc. v. Enter. Products Co.*, 925 S.W.2d 640, 643 (Tex. 1996) (internal citations omitted).

Mr. Leonard purports that the waived right in this dispute was EXCO's right to have its election delivered via certified mail.  (ECF No. 37 at 10).  However, the contractual right provided by Section 17 of the Lease was the right of first refusal, which belonged to Mr. Leonard rather than EXCO.  After EXCO notified Mr. Leonard of its intended sale of the Silva Well, the Lease granted Mr. Leonard ten days to "accept or reject the offer in writing by certified mail." (ECF No. 35 at 3).  Mr. Leonard rejected this right of first refusal after he failed to strictly comply with Section 17 of the Lease.  *Huddleston*, 961 S.W.2d at 558.  Accordingly, waiver could not occur in this context because the right of first refusal was solely vested in Mr. Leonard rather than EXCO.  *See Voss Rd. Exxon, LLC v. Vlahakos*, No. 01-10-00164-CV, 2011 WL 2623989, at *5 (Tex. App.—Houston [1st Dist.] Jun. 30, 2011) (not designated for publication).

<u>Ratification</u>

Alternatively, Mr. Leonard claims that EXCO's conduct in response to his e-mail ratified his right of first refusal under the Lease and demonstrated a meeting of the minds "to complete

and close a sale of the Silva Well . . . ."  (ECF No. 37 at 12).  EXCO responds that ratification

did not occur because it never performed under the Lease and did not proceed with the sale of the

Silva Well.  (ECF No. 38 at 15–16).

A contract is ratified when "a party recognizes the validity of a contract by acting under

it, performing under it or affirmatively acknowledging it."  *Zieben v. Platt*, 786 S.W.2d 797, 802

(Tex. App.—Houston [14th Dist.] 1990).   Ratification is defined as "the adoption or

confirmation by a person, with knowledge of all material facts, of a prior act which did not

legally bind that person and which that person had the right to repudiate."  *Facciolla v. Linbeck

Constr. Corp.*, 968 S.W.2d 435, 440 (Tex. App.—Texarkana 1998).  Ratification occurs when a

party commits itself to an otherwise voidable or unenforceable contract.  *Wamsley v. Champlin

Refining & Chemicals, Inc.*, 11 F.3d 534, 538 (5th Cir. 1993) ("To have ratification, there must

be an antecedent contract that was previously voidable, but not avoided.");  *e.g.*, *R&L Investment

Property, LLC v. Hamm*, 715 F.3d 145, 149-52 (5th Cir. 2013) (discussing buyer's ratification of

land sale contract induced by fraud);  *Land Title Co. of Dallas, Inc. v. F.M. Stigler, Inc.*, 609

S.W.2d 754, 756-57 (Tex. 1980) (discussing principal's ratification of unauthorized contract

entered by agent).   "Any act inconsistent with an intent to avoid a contract has the effect of

ratifying the contract."  *Mo. Pac. R.R. Co. v. Lely Dev. Corp.*, 86 S.W.3d 787, 792 (Tex. App.—

Austin 2002) (internal citations omitted). Once ratified, a party may not disclaim its ratification

and seek to avoid the contract.  *Id*.  Ratification is a question of law "if the evidence is not

controverted or is incontrovertible."  *Id.* at 793.

Mr. Leonard's ratification argument fails as a matter of law because there was no

agreement or contract for EXCO to ratify.  As discussed, Mr. Leonard's defective acceptance

operated as a rejection EXCO's offer to sell the Silva Well.  The parties never formed a contract.

As a result, there was no antecedent agreement for EXCO to ratify.  *See Wamsley*, 11 F.3d at 149.

Mr. Leonard provided multiple e-mails exchanged with EXCO between May and September 2017.  (*See* ECF No. 37-1 at 22–72).  The e-mails include a prepared Assignment and Bill of Sale, revisions of documents, extensions of the closing date, identification of a well operator, and tax protests.  (ECF No. 37-1 at 22–72).  While these documents reflect EXCO's initial intent to proceed with the sale, they do not constitute a ratification because the parties did not have an antecedent agreement.  Further, before the closing date, EXCO explicitly disclaimed the sale, stating that "the proposed transaction has been terminated."  (ECF No. 37-1 at 72).  Importantly, the right of first refusal does not enable Mr. Leonard to compel the sale of the Silva Well after EXCO terminated it.  *Comeaux*, 93 S.W.3d at 219.  Rather than ratification, EXCO's September 5, 2017 e-mail disclaimed any intent to form a contract or consummate the sale of the Silva Well.

Quasi Estoppel

Mr. Leonard next argues that the Court should bar EXCO's current argument that no contract exists under the doctrine of quasi estoppel.  (ECF No. 37 at 12–13).  Mr. Leonard claims that EXCO assumed inconsistent positions in this matter by initially honoring Mr. Leonard's right of first refusal and then refusing to complete the sale.  (ECF No. 37 at 13).

Quasi estoppel prevents a party from accepting the benefits of a transaction "and then subsequently taking an inconsistent position to avoid corresponding obligations or effects." *Newberry*, 999 S.W.2d at 548.  Quasi estoppel is applied when allowing a party to accept a benefit or maintain an inconsistent position would lead to an unconscionable result.  *Atkinson Gas Co. v. Albrecht*, 878 S.W.2d 236, 240 (Tex. App.—Corpus Christi 1994).

As discussed earlier, Mr. Leonard has demonstrated some harm in the form of time and money spent preparing for the sale of the Silva Well and the possible loss of purchasing the Silva Well for $162,477.00 compared to its future price. Yet, this fails to rise to the level of an unconscionable result, given that Mr. Leonard's right of first refusal remains intact for the future and he continues to receive royalty payments under the Lease. Similarly, Mr. Leonard has not demonstrated any benefit obtained by EXCO under the alleged contract for the sale of the Silva Well. As a result, the doctrine of quasi estoppel is inapplicable to this dispute.

<u>Revival</u>

Although not presented in the parties' pleadings, the Court raised the issue of whether EXCO's subsequent conduct toward closing the sale of the Silva Well with Mr. Leonard revived the option period. (ECF No. 45 at 7). EXCO claims that after the ten-day option period lapsed without an election by certified mail, no contract was formed, and no subsequent revival can occur as a matter of law. (ECF No. 45 at 8).

Case law holds that an option holder cannot revive an option he declined. *Comeaux v. Suderman*, 93 S.W.3d 215, 222 (Tex. App.—Houston [14th Dist.] 2002). Similarly, the argument that EXCO's conduct in preparation for the sale after the option period closed is foreclosed for two reasons. Primarily, as discussed earlier, the right of first refusal was vested in Mr. Leonard rather than EXCO, so there was no right for EXCO to waive. Secondly, even if waiver occurred, cases have held that "a lapsed option contract cannot be revived by a subsequent purported waiver." *Bernal v. DK8, LLC (In re HBT JV, LLC)*, 571 B.R. 729, 748 (Bankr. N.D. Tex. 2017); *see also Voss Rd. Exxon, LLC v. Vlahakos,* No. 01-10-00164-CV, 2011 WL 2623989, at *5 (Tex. App.—Houston [1st Dist.] Jun. 30, 2011). Thus, EXCO's conduct in preparation for the sale after the option period closed did not revive Mr. Leonard's option.

**<u>Conclusion</u>**

For the reasons stated above, EXCO's motion for summary judgment is granted. The Court will issue a Judgment consistent with this Memorandum Opinion.

SIGNED **<u>September 25, 2019.</u>**

Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE